Shauck, J.
The plaintiff, a tax-payer, brings this suit under sections 1777 and 1778 of the Revised Statutes, to enjoin the perform-' anee of a contract entered into between the late Board of City Commissioners and Edward Ryan for the pavement of Third *45 street in tbe city of Dayton, from Sears street to the river bridge. The authority conferred by the statute is to apply for <lan order or injunction to restrain the mis-application of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinance governing the same, or which was procured by fraud or corruption.
In his petition, the plaintiff alleges the facts which entitle him to maintain the suit, and that in 1890 a resolution for said improvement was passed by the Board of City Commissioners, and approved by the City Council; that by said resolution the improvement wras to be made by paving said street with granite block, Medina stone, asphalt, Hailwood block, Hayden block or red brick, and specifications were made and filed ; that thereupon the auditor was ordered to advertise for bids for paving the street with all of said materials, the kind of material not to be determined until the bids should be opened. After due publication of the notice, numerous bids were filed upon printed forms with instructions furnished by said board, and for the various kinds of materials aforesaid. After the bids were opened the Board selected Medina stone as the material of which said improvement should be made, and rejected all bids for other material, though some of them were lower than the lowest bid for Medina stone. The Board thereupon accepted the bid of Ryan for Medina stone, and entered into a contract with him. And the plaintiff avers that' said contract was illegally entered into for the following reasons :
The Board did not first determine the kind of material to be used|for paving, nor the kind of filling that should be used in case the pavement should be made of Medina stone or granite. Ryan’s bid was not an answer to the advertisement made'by the city, but was altered by him in a material manner with’an intent to get an advantage of the city, and his bid was not the lowest bid for paving said street, nor the lowest *46 of the bids for paving it with Medina stone; that the specifications provided that coal tar cement, Murphy grout or other equally good material might be used for filling the stone pavement, and accordingly numerous bidders made proposals for the fillings named, and for others well known and equally good; that without notice to any of the bidders, and before opening the bids, the Board resolved to select the coal tar fillings, and to reject all other fillings, and accepted Ryan’s bid for Medina stone, with coal tar cement filling although his bid was not the lowest with that kind of filling, and other bidsfor equally good filling were lower. The instructions to bidders required each of them to furnish a sample of his stone. The specifications and the printed blank proposals furnished to bidders called for “First Class Medina Block,” but Ryan changed his proposal to “ First Class Medina Stone Block pavement as per sample marked ‘ Medina Paver,”’ and the contract was entered into according to the proposal so changed; that said sample is not a first class Medina block, but is only a second class, hammer dressed stone, greatly inferior in quality and much lower in price than Medina block; that Ryan knowing the inferiority of the sample, induced the commissioners to believe that it was a Medina block, and, acting in that belief, to enter into said contract.
The answer is partly in the nature of a denial of some of these averments, and of a demurrer toothers. It alleges that the Medina stone described in the petition as required by the specifications and blank proposals is a natural faced or Claflin block; that the stone described in the proposal filed by the defendant, and the sample referred to, would, under the conditions referred to, make a more durable street than that described in the petition, which is wholly different in price and manner of production, and that the stone described in his proposal and in the contract, will fill the requirements of the specifications, the sample being a “first class hammer dressed block.”
The defendant further alleges that the contract was entered *47 into February 8, 1892, of which the plaintiff and all other tax payers in the city had notice, and that relying upori said contract he expended large sums of money in the purchase of stock and materials for its performance, and that nearly three months elapsed before the bringing of this suit.
It is admitted that the commissioners adopted specifications for making the improvement with the several kinds of paving materials named; that they invited and received proposals for all of them, and that they did not -determine, until after the bids were opened, what material would be used. Counsel for the plaintiff concedes that this course is in accordance with the provisions of the act of March 18, 1890, which provided for the reorganization of the city by the creation of the Board of City Commissioners, and defined their powers and duties. The sixth sub-division of section 1707d-9 of that act, expressly authorizes them to defer the final determination of the material to be used until the bids are opened, although they must determine in favor of a kind of material which was mentioned in the specifications previously made, and for which proposals have been received in response to their advertisement.
The manifest purpose of the provisions of this act is that the bidding shall bring into competition not only the contractors, but the various materials as well. But the contention is that no such authority is found in the act of April 24, 1890, “ To provide for the improvement of streets and avenues,” and that, therefore, there is no such power. To support this conclusion, two canons of interpretation are invoked : First, that the provisions of an act relating to a special subject will control those of an act that is general; and second, that in cases of conflict between the provisions of two legislative enactments, those of the later should control. But to the application of these rules, it is indispensable that there be a conflict between the provisions of the general and ■special, or those of the earlier and later acts. It is the duty of courts to accord full force to all valid statutory provisions when it is possible, and resort should be had to the rules re *48 ferred to only where there is found such repugnancy between the provisions of different statutes that both cannot stand. These limitations upon the rules are as familiar as the rules themselves. The act of April 24 does not in terms repeal nor amend any of the provisions of the act of March 18, nor does it in terms take street improvements out of the operation of that act. There is, therefore, the expressed legislative intent that all the provisions of both acts should stand, unless there is irreconcilable conflict between them. We find no conflict whatever between the provisions of these acts. The second section of the later act does provide that the commissioners shall “ determine the kind and description of pavement to be used,” and the fourth section, that they shall cause to be made plans and specifications with an estimate of the cost including the material, and shall submit the same to the council of the city with their recommendation, and a resolution or ordinance declaring the necessity for such improvement. Upon the passage of such resolution or ordinance by the council it becomes the duty of the commissioners to advertise for proposals. But in the same section of the act of March 18, which provides that the final determination of the material to be used may be postponed until after the opening of bids received on. the various kinds of material, it is also provided that the commissioners shall, before the advertisement, cause a careful estimate of the cost to be made. The terms of the act of April 24 do not authorize nor require the city council to determine the material to be used in a street improvement, nor to approve the determination of the commissioners in that regard. The council can advance or defeat the improvement by passing or refusing to pass the ordinance or resolution declaring the necessity for the improvement, and in no other way. But if we infer the duty of the countil to approve the commissioners’ selection of material from the fact that the estimates must be submitted to it, we do not become involved in any difficulty. The passage of the ordinance or resolution would then imply the council’s approval of any contract *49 whicli the commissioners might make, after due advertisement, with the lower bidder for any of the materials submitted. The course of the commissioners in postponing the final selection of the material to be used until after the bids were opened was clearly lawful, and in view of its manifest promotion of the public interests by bringing the various paying materials into competition, it was highly commendable.
The general specifications adopted by the commissioners for improvements required that “ the Medina stone blocks must be of the best quality of Medina sandstone.” The advertisement for sealed proposals called for proposals for paving “ with granite block, Medina block, Haydén block, Hailwood block, asphalt, red brick or fire brick,” and informed those who contemplated making proposals that “ all bids must be made upon the printed forms to be obtained at the office of the board of city commissioners.” The printed form of bids was as to this item : “ First-class Medina stone block pavement per square yard,” which, in the proposal filed by him, Ryan, changed by adding the words “per sample marked Medina Paver.” This proposal is made a part of the contract, whose validity is called in ques- ' tion, and the obligation which it imposes upon Ryan, is to pave with material equal to the sample referred to. The evidence abundantly shows that the sample is not what is known among those familiar with the language of this branch of industry as Medina block, but it is a hammer dressed stone of inferior quality. The Medina block of the trade presents an even — not glassy — surface, approximates the parallelogram in shape without the use of the hammer, and because of its superior merits and the difference in the manner of its production is substantially a different stone from Ryan’s sample. Instead, therefore, of complying with the advertise ment, Ryan elected to make a proposal for paving the street with material for which bids had not been invited. .The commissioners very properly rejected the bids which by their *50 terms proposed to use second class Medina stone in making the improvement, and it ought not to be said in a court of equity that the one shall suffer for open dealing or profit by evasion. It is familiar in the law governing contracts by public officers, that proposals must respond to the advertisement by which they are invited, for otherwise there would be no competition. In contemplation of law the case before us is as if the commissioners had proceeded in accordance with law to adopt specifications and invite bids, and had then in total disregard of the law entered into»a private contract. True, the three commissioners testify that they intended to require the making of a pavement of the best quality, and that they had no knowledge of the natural faced stone, which is known as Medina block. But, that stone of that description was well known by that designation among those familiar with stone paving materials, is abundantly shown by the evidence, and by other bids filed for this and other improvements at the same time. Ryan’s bid for other improvements shows that he was well aware of the fact, which he concealed from the commissioners. The material question is not, what did the commissioners understand to be the meaning of this advertisement, but how was it understood by contractors familiar with the language employed. They understood that they were invited to bid on Medina block, and Ryan’s bid upon a material substantially different was not the competitive bid upon which alone a valid contract can be founded.
But little attention is due to the evidence which is introduced to show that a first-class pavement could be made of material like Ryan’s sample. It would evidently make an inferior pavement, and we are not to substitute our judgment for that of the commissioners as to the material to be used. The case requires of us nothing more than to determine whether the commissioners exceeded the discretion vested in them by law.
Nor do we see merit in the evidence introduced to show the defendant’s preparations for the performance of this contract before this suit was brought. Less than three months *51 elapsed before the suit was brought, and the propriety of bringing it was perhaps not known at an earlier date, and the validity of this contract was otherwise challenged within thirty days of its execution.
McMahon & McMahon, for plaintiff.
Young & Young, Gottschatt & Broton, Pringle & Johnston, for defendants.
The defendant could hardly have expected that officers, vigilant in guarding the rights of the public, would permit him to use much of the stone delivered on the line of the proposed improvement, even in the third class pavement indicated by his sample.
It is clear from the evidence that the commissioners and Ryan never understanding^ agreed upon the material to be used in making the improvement; but the most serious objection to the contract is that it is not based upon a competitive proposal responsive to the advertisement.
A decree will be entered, enjoining its performance.